The 4th District Appellate Court of the State of Illinois has now convened the Honorable John W. Turner presiding. Thank you Mr. Clerk. Good afternoon. This case is People v. Priester and that's case number 4180644. Will counsel for the appellate please say your name. My name is Maria Harrigan and I represent Mr. Priester. Excellent and for the appellate. My name is David Dimension. I'm with the appellate prosecutor. I'm representing the state in these proceedings. Okay, thank you Ms. Harrigan. You may proceed. Good afternoon your honors. This afternoon I'd like to focus my argument on the second and third issues raised in my brief but I'm prepared to answer questions on any of the arguments. In this case the pillars upon which Mr. Priester's convictions were built were the identifications of two witnesses on the porch, the admission, the alleged admission that he made that came in through the prior inconsistent statement of LaTosha Wright, and the testimonies of Julio Thompson and Steve Bennett. Appellant's arguments here knock out one of these pillars completely and severely weakens another one. Turning to argument 2, the portion of Wright's prior inconsistent statement that described Priester's alleged admissions to the shooting should never have been allowed as substantive evidence. Under subsection 115-10.1, a prior inconsistent statement is only admissible for substantive purposes when it's made under oath or when it narrates something that the witness has personal knowledge of. In Peeble v. Simpson, our Supreme Court limited personal knowledge to find personal knowledge as pertaining to the events that were the subject of the statement. In other words, the witness had to have personal firsthand knowledge of any events described. Ms. Wright's not having... Just for a second, I'm getting a little feedback. It's making it hard for me to understand everything you're saying. Dave can you hear me? I can hear you fine. Is there... no I meant Dave Boardman. No? Okay. Maybe pull a mic away a little. I'm sorry. I'm sorry. I'm only... Yeah, that's better right there. Is that better? Sorry, the only reason I'm wearing... Is that better for you too, Justice Holden-Wright? Yes. Is that better? I'm sorry. Thank you. There's construction going on outside, which is the only reason I'm using this. I understand. Okay, argument 2 again, section 115-10.1. In this case, Ms. Wright did not have personal knowledge of the shooting here. Therefore, the portion of her prior inconsistent statement where she discussed this should have been redacted. In this case, this could not have been reasonable trial strategy. Defense counsel wanted the whole statement out and when the judge ruled that it was admissible but was open to redacting it, defense counsel should have asked for this very damaging portion of the statement to be taken out. This would not in any way conflict with his defense theory, which that priesthood did not do, did not commit the shooting. In fact, if that's your defense theory, you should do everything possible to get out, take out any possible admissions to this case. Ms. Harrington, you note that defense counsel wanted the entire statement out. Exactly what are you basing that argument on? Well, it's not our argument. We're not going there in this argument, but at trial, the trial counsel, his original objection was to the entire prior inconsistent statement. How was that? Was that in writing or an oral objection? What was that? I believe it might have been when the state, it was either a written motion by one party or the other and this was discussed at the hearing on that motion to bring in the prior inconsistent statement. So you can't tell me specifically where in the record that is? I'm sorry, your honor. I don't have a I don't know where that is at the moment. I asked because we know that defense counsel cross examined right about the statement and I just didn't see anything in the record where counsel tried to keep the entire statement out. Now in the, I believe it was in the post trial motion. There was, you know, an objection to the statement in terms of how the state offered the prior inconsistent statements, the procedure used and, you know, saying that they didn't ask the right questions as far as how you confront the witness with the prior inconsistent statement. But I'm not aware of anything in the record where counsel objected to the statement coming in at all as a whole. Um, I believe it was, like I said, I believe it was prior to trial and it might have been when this was first set for trial and the first jury was almost set and then defense counsel became ill. So I believe it was towards the beginning of the record, but I don't that's also okay. And it's yes, I believe it was true. I don't have a record set for you right now, your honor. I'm sorry. That's okay. Thank you. But nevertheless, once the trial judge indicated that some of these that the statement could be redacted and the parties actually went through the entire statement and asked for portions of it to be redacted. There's no reasonable trial strategy on defense counsel's part not to ask for the admission to be rejected. It's clearly prejudicial. It was the only direct admission to the crime that came in. Priester never made any inculpatory statements to the police. He maintained his innocence throughout pretrial and all trial proceedings. And a confession is the most powerful evidence piece of evidence that a jury can hear. Um, this alleged confession was bragging about a murder, extremely prejudicial, and the state quoted it in its closing argument. So it relied on this on this portion of the prior inconsistent statement. Um, in its attempt to when trying to convict Mr. Priester, there's no way the jury was not affected by this error. In addition, the other evidence was far from overwhelming. Only two of the six people on the porch made a positive idea of Priester as the shooter. The shooter was described by these people in a multitude of contradictory ways. He had. He was bald. He had long, long braids. He was. He was wearing plaid pants. He was wearing dark pants. He had a grill on his teeth. He had no girl on his teeth. All these these descriptions were completely contradictory, and they were all provided by the people on the porch. The other way, counsel, let me ask you this. You have people who are on a porch and they're being shot at. Of encountered him prior to the shooting. So we have, as you mentioned, two people who identified him. That's significant. Isn't that more than we actually need? Um, well, first of all, your honor one. Nobody encountered Priester before. Yes. The young woman who was coming back from the store, I I'm not saying they, you know, interacted or spoke or anything like that, but she observed the two men. Um, she also was unable to identify him in the photo array and only identified him in the lineup and at trial. And he identified him when he was standing in person at the at the jail police station, wherever they were. She identified him. Then she couldn't pick him out of an assortment of pictures. But seeing him in person, which is the when the shooting took place, she did identify him. Correct. She did. She identified him in the lineup. She did in the lineup and in court. Um, but again, we're not making a reasonable doubt argument here. This is an argument that the evidence was not overwhelming for purposes of that. This admission shouldn't have been allowed. And there's lots of other evidence that also has to be considered. Um, the witnesses who had divided loyalties or motives to lie, like Wright and Underhill and Steve Bennett and Shane Thompson, those, these are all people that fingered Priester, but only after them, they themselves were threatened with arrest and, um, with arrest and, um, and Wright herself was afraid that her children were going to be taken away from her by DCFS. Um, so the entire, the entire state's evidence has to be looked at when you're deciding whether it's overwhelming. And yes, we have a couple of identifications, but we also have all sorts of inconsistent descriptions and other witnesses who had motives to lie. Um, Steve Bennett, like I mentioned before, he actually matched the description that one shooter gave that he had droopy He was the one that ditched the weapon, but lied about where he put it. And he again, didn't not, didn't name Priester for weeks and a couple of weeks until after he himself was arrested. Thompson is the only occurrence witness outside of the people on the porch. He admitted to being angry at those people at the party and feeling threatened by them, but there's no indication that anyone ever threatened him. And he instigated the shooting. He himself said, I was my idea to, to bring a gun. He himself could have been charged with this offense. He wiped a cell phone clean. He was washing his clothing when the police came to his house by, uh, and he only again named Priester after he was subject to police interrogation for five hours. And this also touches on my third issue that I raised that this trial counsel was also ineffective for not proposing an accomplice witness instruction for Mr. Thompson. Again, he's no doubt an accomplice for witness testimony. He was involved in this. Um, the, the accomplice witness instruction would guide the jury in how to evaluate Mr. Thompson's testimony in light of the other evidence hurt. In this case, some of the other evidence heard is a description matching Bennett. One of the witnesses on the porch actually identified Thompson as the shooter. So, um, counsel, let me stop you there. When you say that one of the witnesses identified Thompson as the shooter, what witness was that? I believe that was, um, Tucker. You know what, Tucker? I'm sorry. Oh, the person was 11 years old at the time. And so are you referring to the part in the interview when the police interviewed her? And I'm sorry. No, I believe she was on the stand and they presented to her, um, a picture of the maybe I can't remember if it was the, um, photo array perhaps and ask her to read something. And she said at the time that is, um, the person identified as a shooter. And then the prosecutor said, I'm asking you to read such and such. Does it say that she identified Priester as the shooter? And she said yes. Is that the exchange you're talking about? I'm she actually identified. I think it's, um, when she viewed the lineup, she viewed, she identified a filler as the shooter, even though priest was in. And then she identified, I believe I have it cited here as, um, record 13 oh 5 to 13 oh seven that she identified Thompson as the shooter from the photo array. And I think that's incorrect because on the witness stand, she was presented with that photo array and the prosecutor was asking her to read where she had put her initials or her signature and said, you know, reading what she wrote, she said on the stand, that's the person I identified as the shooter. And then when the prosecutor actually read what she had written and signed off on, it was not her identifying Thompson as the shooter. Okay, Your Honor. Well, I apologize if that's if that was a that she said that she had identified Thompson. Um, but if that if I have gotten that wrong, I apologize for that. I don't have the record open in front of me or I, I look forward, but, um, I just wanted to make sure there's not some other instance that you would be referring to. No, it was just when she was, it was, yeah, it was when she was on the stand because I don't think she was, that was the only time that she was on the stand. Um, and but again, the a the evidence was, once again, not overwhelming. And it also did include this numerous descriptions of the shooter that some did and some did not match Priester. There weren't, there were not, there were only two identifications from the people on the porch. So Thompson's testimony should have been evaluated, um, as an accomplice witness here. And the jury was simply not instructed that due again to defense counsel's unreasonable actions in this case. Um, again, if they had discounted Thompson's testimony, found it unreliable, the state would have been left with Bennett, Wright and Underwood, all of whom have motives to lie and reasons to lie and made contradictory, inconsistent statements. I mean, that under Underhill, I think I believe it was Underhill. She didn't, she was completely unreliable. She didn't barely remember what happened that night. She's medicated. She has a car accident that she suffered a traumatic brain injury. So her testimony is, should completely be discounted. So basically you have Wright, Bennett, Thompson are the three main witnesses that put Priester there, aside from the two identifications from the people on the porch. Again, we're not making a reasonable doubt argument here, but under the, under these circumstances, the two omissions by defense counsel clearly prejudiced Mr. Priester. If your honors have no other questions, we request based on the arguments that I've put my briefs and that I've explained here today that Mr. Priester's convictions to be reversed in this case be manned for a new trial. Okay. I see no questions. Thank you. You will have rebuttal. Uh, Mr. Ransom, please. Thank you. Honors. May it please the court counsel. In this case, the statement in the rights, uh, tape statements, I got a headshot, uh, cannot be considered. It was completely waived by the defendant. In my reading the record, I do not recall any point where the defense counsel sought to there is never any objection to the, any specific contents of the tape other than a discussion of whether she would be allowed if they would be allowed to produce the statement. I saw a defendant with a gun because there was some concern that she might be referring to prior instances rather than the instant case, but that was clarified so that she was allowed the tape statement about her seeing the exchange of presumably the gun between a defendant and Bennett would be included in the statement. So the, there was never any objection at trial or in the post trial motion to this statement. I got a headshot. So the only way that could be considered is under the rubric of, uh, uh, defense counsel claimed it was, um, plain error, but plain error does not apply because it was invited by the defendant who expressly questioned right about this particular statement, elicited the statement said, did the defendant actually say that the answer? No. So this is clearly a issue that's been waived and should not be considered. And even determining as ineffective assistance, we have to, uh, this standard for ineffective assistance is whether the council's performance was deficient in that available low and objective standard reasonables and the reasonable possibility probability that counsel's performance result would have been different. And this court must presume that the conduct fell within a range of reasonable assistance and that mistakes in strategy and judgments are ineffective only if counsel failed to subject the state's case to meaningful adversarial testing. Mr. Manchin, if you were to consider it not forfeited, do you agree that it is inappropriate for that testimony to come in given her lack of knowledge of the actual events? Uh, ordinarily, yes, that the contents would not, what she was told cannot come in as a prior inconsistent statement of the statute. That's correct. Okay. Um, though this case is somewhat unique in that the right testifies at trial that the defendant never left her house the night of the shooting, that anything she told the police, I'm paraphrasing was, was a lie at what she was told to say by Bennett. So are we, when she's repeating the statement, uh, I got a headshot. Is she re referred? Is she repeating what the defendant said? Or is she repeating what Bennett said? So that that makes the puts a different twist on the thing. But I think in this case, it was counsel's trial counsel strategy below to let the entire statement come in to bolster the claim that, Hey, Bennett is a shooter and he's trying to frame the defendant by telling, got giving right a script to follow, including this statement. I got a headshot in the statement. There's other in her, uh, tape statements. There are other remarks made by the defendant to her that were admitted, including a defense statement that he did nothing. If counsel had sought to exclude what she was told by the defendant, he would have had to exclude both. I got a headshot and I did nothing claim. So it was not unreasonable given the circumstances here to say, okay, this right statement just can't be believed, including the statement. I got a headshot because this was a script fed to her by Bennett. This is, that is not, uh, defective or ineffective. This is counsel nor can defendant had been shot comment. Contrary to counsel's assertion, that was not the only admission made by the defendant. Uh, the evidence so that he told, I believe it was Thompson that that will be a lesson to everybody not to mess with LBR so that, that he didn't make other admissions than this. I got a headshot plus there's, there's an old saying, you don't see the forest for the trees. What defense counselor here is saying, let's not look at the trees. Let's look at each individual leaf, point out all falls and, uh, defects in each individual leaf. And then say, because of those each individual lease, the entire forest is, should be disregarded. Uh, the evidence here, I believe was overwhelming. Sure. Each witness may have had been subject to attack, but the overall case with two identifications by independent witnesses with no acts to grind a third identification that, uh, by a, uh, supposedly bias witness. And then all the other evidence tied together was more than sufficient to say that the results of the trial would have been the same. Had the, uh, that one statement, I got a headshot been excluded. That's the same with the question of the, uh, instruction on accomplished witnesses. The decision whether to request an instruction is clearly a matter of judgment and when a witness says he is involved with the defendant, counsel could reasonably be leery of giving the jury an instruction that at least implies that the defendant is guilty or is involved in the case. Plus the failure to give an instruction is only ineffective if it is critical to the, uh, to the defendant achieving a fair trial. And the accomplished witness instruction is not such a critical instruction. The purpose of the, uh, accomplished witness instruction is to tell the jury that they should consider the testimony of a particular witness, uh, because of his bias. And that purpose was served in this case, even without the accomplished witness instruction based upon the, uh, cross examination of the witness, the attack on the witness and closing argument and the standard instruction on how to, uh, view the testimony of witnesses. I think given the totality of that, the failure to request the instruction, which is a matter of  justice. Mr. Manchin, this is off the topic, but, uh, can you tell me what the record establishes as the motive for the shooting? Uh, apparently, uh, I believe it was Julio Thomas into the house where the defendant was, uh, staying and uh, something like these people are just disrespecting me or, uh, taunting me or, uh, yelling, yelling at me. And then he went back and retaliated for that, uh, uh, harassment. Uh, I'm not, I don't, I don't recall the exact details, but that's basically how it was. Uh, who are you comes to, uh, the defense residents and says, I had problems with these people. The defendant goes back with him with a gun and start blazing away. That's, that's, that's in a nutshell, the, the, uh, motive. Okay. Thank you. Okay. If there are no further questions or comments, I will stand on my brief with respect to the, uh, uh, jury selection question, unless the court has any questions regarding that. I see no questions. Thank you. Um, Ms. Harrigan, do you have any rebuttal? Yeah, just, yes, your honors. Just briefly, um, as, uh, in response to the comment that the, uh, that this was invited error, um, defense counsel cross-examined right about, about this statement, because he knew that the prior inconsistent, prior inconsistent statement was going to come in at when the police officer testified. So it's not invited error. It was the state that wanted to introduce this entire statement. And they went through the statement to redact it. And the counsel was aware that this was going to go in, couldn't go in. He had no choice, but to cross-examine her on it. It's not a mistaken strategy here. It's a mistaken law. It's clear that this was error. Admissions like this do not come in under statutory law. And this is an extremely prejudicial, harmful piece of evidence that comes in against the defendant. Um, there's, uh, again, this is not, there's no, um, strategic reason that goes along with his defense to not keep this out, contrary to what my opposing counsel said. The, the whole, uh, defense was that he didn't do it, that somebody else did the shooting. Whether it was Thompson, whether it was, um, Bennett, some, somebody else did the shooting. So to exclude an admission, uh, it would be very critical in this case. So it would definitely be an unreasonable, not a sound strategy. Um, as far as the second issue goes, the juries are always instructed as to witnesses bias and, and that's a general instruction. If that covered it, they would never, the IPI would not have created an accomplice witness instruction. This is the type of case that calls out for an accomplice witness instruction because of what Mr. Thompson said and how he acted after the offense. If your honors have no questions, um, I rest on my brief as to and we request that Mr. Preister's conviction be reversed and this cause remanded for a new trial. Okay. I see no questions. Uh, the court thanks both of you for your arguments. The case is submitted and the court now stands in recess.